PHILLIP A. TALBERT
United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:21-CR-0040 KJM |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR BAIL REVIEW |
| v. | |
| MURAT KURASHEV, | DATE: April 28, 2022<br>TIME: 2:00 p.m.<br>COURT: Hon. Allison Claire |
| Defendants. | |

## I.   INTRODUCTION

On April 16, 2022, claiming a change in circumstances, defendant Murat Kurashev (hereinafter "Kurashev") filed a motion for bail review. ECF 41. Because Kurashev has not presented sufficient evidence to rebut the presumption that he is both a danger to the community and a flight risk as required by 18 U.S.C. § 3142(e)(3)(c), this Court should deny his motion.

## II.   PROCEDURAL AND FACTUAL HISTORY

### A.   Procedural History

On February 18, 2021, Kurashev was charged by indictment with attempting to provide material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1). ECF 1. On February 26, 2021, Magistrate Judge Barnes held a detention hearing and ultimately concluded, based upon 18 U.S.C. § 3142(e)(3)(c), that Kurashev had not rebutted the presumption, and ordered that he be detained pending trial. ECF 13 and 14. On April 16, 2022, Kurashev filed a bail review motion alleging that his

circumstances have materially changed, in that he now has a prospective surety willing to post approximately $400,000 in equity to secure Kurashev's release pending trial. ECF 41.

B. **Factual History**

Kurashev is a Russian citizen who has no lawful status in the United States and at the time of his arrest in February 2021 was the subject of immigration removal proceedings. Kurashev and his family entered the United States through Mexico. Between in or about July 2020 and February 2021, Kurashev used money transfer services in the Northern and Eastern Districts of California to send approximately $12,000 to two known couriers of an individual who is a fundraiser for a foreign terrorist organization in Syria. The FBI confirmed that the money sent by Kurashev was retrieved by these couriers at locations in Istanbul and Ankara, Turkey.

On-line discussions between Kurashev and the fundraiser, seized pursuant to multiple federal search warrants, equate providing money in support of the foreign terrorist organization's fighters as tantamount to being engaged in violent jihad. During these conversations with the fundraiser, Kurashev mentions that he wishes he could join the fight in Syria as a mujahideen and expresses regret that he can only provide financial support. The conversations between the fundraiser and Kurashev make clear that Kurashev was well-aware of who the fundraiser supports. Additional evidence seized by the FBI revealed that Kurashev followed the fundraiser's on-line presence and various social media accounts. Some of the fundraiser's social media accounts that were viewed by Kurashev included solicitations for money to purchase military equipment, boots, clothing, firearms, and, in one case, a motorcycle. Kurashev even acted as the "middleman" between an undercover law enforcement operative, who was in communication with the fundraiser about financially supporting violent extremism in Syria.

The FBI's review of Kurashev's electronic devices seized at the time of his arrest found them replete with violent extremist content. Among the numerous videos found on Kurashev's devices and in his on-line accounts is at least one that the FBI assesses is of the foreign terrorist organization with which the fundraiser is affiliated.[1] This video contains imagery of fighters, weapons, first person shooting footage and other violent extremist content. Another video found by the FBI depicts an

---

[1] This video was also found during the execution of a search warrant on Kurashev's Apple iCloud account prior to his indictment.

individual, presumably Kurashev, driving down Interstate 80 watching approximately 51 seconds of the above-described video.

The FBI found internet searches for airline flights between Sacramento and the region in Russia where Kurashev and his family are from on the iPhone in Kurashev's possession at the time of his arrest. The FBI also found internet searches for land purchases in this same region a few days prior to his arrest.

The FBI discovered that on or about February 1, 2021, Kurashev conducted a Google search for "devtac ronin," which is believed to be a reference to the DevTac Ronin ballistic helmet. Kurashev then visited the following websites: bulletproofzone.com, securityprousa.com, amazon.com, devtacdesigns.com, and batmanfactor.com. On one of Kurashev's social media accounts, the FBI also found a message from Safe Life Defense providing information about a body armor bundle that included the following: 2 NIJ certified level IIIA + panels, 2 (ICW) Level IV rifle plates, 1 tactical carrier for overt wear, and 1 concealed carrier for covert wear. The FBI does not know at this time if Kurashev was planning to purchase these items for use in the U.S. or to send the body armor overseas for use by the foreign terrorist organization. The FBI further located evidence on Kurashev's phone that shows that on or about February 10, 2021, Kurashev transferred $200 worth of Bitcoin directly to a wallet for the fundraiser. The fundraiser sent the wallet address directly to Kurashev via Telegram on the same day. Kurashev responded, "sent." It appears that Kurashev attempted to delete these Telegram messages.

Kurashev's communications further indicate that Kurashev became steadily more radical in his support for violent extremism during the approximately 6 months leading up to his arrest. In fact, on or about February 18, 2021, the day before Kurashev's arrest, Kurashev received a Telegram message from an account believed to be used by the fundraiser. The message verbatim translated from Russian said, "If you decide to do it [invest in one of the fundraisers projects], trust in Allah, knowing that you are using your assets to carry out jihad." Kurashev responded, "Yes, brother, I am trying to act with only this intent." Later in the conversation, the fundraiser wrote, "Do you know how much we spent on one operation here? At least $200,000." Kurashev responded, "War is an expensive pleasure." Later in the conversation, Kurashev wrote, "I hope we become shahids and recollect these days with a smile on

our face."[2]  It appears Kurashev tried to delete these Telegram messages.

Given Kurashev's increasing radicalization over time, the FBI assesses that had he not been arrested, it is possible that he could have become an operational participant in terrorist activities

Although he was working in construction and not detained in-custody by ICE prior to his arrest on this indictment, Kurashev's conditions of release required that he wear an ankle location monitor. Other than his wife and four children, Kurashev has no apparent ties to the United States or in the Eastern District of California.

### III.    ARGUMENT

#### A.    Law

Under the Bail Reform Act, the Court may "at any time amend the [release] order to impose additional or different conditions of release."  18 U.S.C. § 3142(c)(3).  "Where, as here, there is probable cause to believe that the defendant as committed an offense identified as a '[f]ederal crime of terrorism' under 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years of more is prescribed, there is a rebuttable presumption that 'no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  If, after a detention hearing, the court finds that this presumption has not been overcome, "such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).  Danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  The United States is only required to prove flight risk by a preponderance of the evidence.  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985)

If a defendant proffers evidence to rebut the presumption of dangerousness, in determining whether conditions exist to guarantee the defendant's attendance and assure the safety of others and the community, the court is instructed to consider: (1) "the nature and circumstance of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the defendant;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(1)–(4).  *See United States v. Winsor*, 785 F.2d

---

[2] Shahid denotes a martyr in Islam.

755, 757 (9th Cir. 1986); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).  The United States is permitted to proceed by proffer and to submit hearsay evidence with respect to issues of detention. *See Winsor*, 785 F.2d at 756(citing cases).   Moreover, "the presumption is not erased when a defendant proffers evidence to rebut it, rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant factors listed in § 3142(g)." *Hir*, 517 F.3d at 1086 *citing United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (internal quotations marks omitted).

### B.    Kurashev cannot rebut the presumption

Under the facts of this case, Kurashev cannot rebut the presumption found in 18 U.S.C. § 3142(e)(3)(c).  Kurashev's un-checked desire to support a foreign terrorist organization by sending approximately $12,000 overseas to known couriers of the fundraiser likely intended to be used for the purchase of military equipment (among other things), consumption of videos depicting violent extremism, following and "liking" the fundraiser's on-line solicitations, direct on-line communications with the fundraiser, and his own words indicating a desire to support violent extremism, are clear and convincing evidence that Kurashev is a danger to the community and militate against his release on conditions. Furthermore, other than a passing reference to Kurashev's purported lack of criminal history and the presentation of a property bond, he presents no real evidence that addresses how either of these factors alleviates his danger to the community in light of the current charges and the evidence in support of those charges.

The Court must examine the four factors contained in 18 U.S.C. § 3142(g)(1)–(4).   Here, the charges are serious – Kurashev is charged with a federal terrorism crime as defined in 18 U.S.C. § 2332b(g)(5)(B).  On no fewer than twelve occasions over the course of 6 months, Kurashev is alleged to have sent approximately $12,000 overseas to support a foreign terrorist organization.  These actions cannot be characterized as insignificant or mistakes.  Such continuous financial support (usually in $1,000 increments) combined with Kurashev's own words is strong evidence and suggests a serious commitment to supporting violent extremism.  The defendant's history and characteristics also favor detention.  Although he does not have any known criminal history he was in immigration removal proceedings and subject to location monitoring as part of his conditions of release at the time he

committed this offense. Kurashev abused the immigration court's trust by engaging in criminal activity in support of a foreign terrorist organization and therefore cannot be trusted to follow this Court's conditions if he were released in this case. There are simply no guarantees that Kurashev will not immediately re-engage the fundraiser or other members of the foreign terrorist organization upon his release and continue his financial support of violent extremism or something worse. Finally, Kurashev's increasing radicalization during the charged period in conjunction with his continuous contact with the fundraiser and provision of substantial monetary support are clear and convincing evidence that he is a danger to the community should he be released.

### C. Kurashev is a flight risk

Kurashev urges this Court to release him on a proposed $400,000 bond secured by the residence of an immigration paralegal working on his removal case and to the third party custody of his wife. Notwithstanding, Kurashev remains a flight risk.

First, it is important note that neither Kurashev nor his wife have any significant ties to the United States.. More to the point, as evidence taken from his iPhone indicates he appears to have been planning to return to Russia and purchase land shortly before his arrest.. If released, Kurashev could leave the United States at any time without sacrificing anything of value to him at all. He is presently unemployed and if he fled to Russia, given the current political situation and Russia's refusal to extradite other indicted United States citizens facing serious charges (i.e. Edward Snowden), Kurashev would likely never return to the United States to face these charges.

Second, even though the proposed bond is substantial, there is absolutely no evidence of any significant personal relationship between the immigration paralegal and Kurashev. The nature of their professional relationship is also somewhat vague. The use of property bonds is relatively common in fashioning conditions of release for a defendant pending trial. Typically, however, those willing to post their property have some significant familial or quasi-familial connection (i.e. a close friend tantamount to a family member) to the defendant. Moreover, the rationale for utilizing a property owner with close ties to a defendant is minimize the risk of the defendant's flight by relying on the emotional attachment between the property owner and the defendant. This arrangement is based on the fundamental notion that the defendant will not endanger his/her relationship with a person who has risked something

valuable to secure the defendant's release because the defendant places great value on that relationship. Such a relationship has not been shown here. There is simply no evidence of any significant bond between the immigration paralegal and Kurashev.

Finally, while a third party custodian is one of the conditions contemplated under 18 U.S.C. § 3142(c)(1)(B)(i), the United States questions the propriety of allowing the defendant's wife to fulfill this role. The role of a third party custodian is to essentially ensure that the Court's conditions of release are followed by a defendant. Although Kurashev's wife is apparently willing to take on this role, it is wholly unclear from the defendant's moving papers whether she has a full understanding of what this responsibility entails and whether she would report Kurashev to pretrial services if he violated the Court's conditions.

### IV.  CONCLUSION

Because he has not rebutted the presumption and because he remains a flight risk, this Court should deny Kurashev's request for release on conditions.

Dated: April 25, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ HEIKO P. COPPOLA
HEIKO P. COPPOLA
Assistant United States Attorney