UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:21-cr-00040-KJM-1 |
| Plaintiff, | ORDER |
| v. | |
| Murat Kurashev, | |
| Defendant. | |

On August 25, 2023, this court granted defendant Murat Kurashev's motion for reconsideration of this court's order revoking in part the magistrate judge's release order. *See* Prior Order (Aug. 25, 2023), ECF No. 127. The court determined Mr. Kurashev had identified new information justifying "this court's review of bail to consider anew whether there are 'conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id.* at 3[1] (quoting 18 U.S.C. § 3142(g)). The court then held an evidentiary hearing on October 2, 2023. Mins. Evid. Hr'g, ECF No. 130. Heiko Coppola and Dmitriy Slavin appeared for the United States. *Id.* Christina Sinha and Megan Hopkins appeared for Mr. Kurashev. *Id.* The United States' witness, Jessi Groff, and Mr. Kurashev's witness, Liana Kurasheva, the latter using the services of the Russian language

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1

interpreter, were sworn and testified. *Id.* The parties presented their closing arguments in written format. *See* Gov't's Closing Statement, ECF No. 133; Def.'s Closing Statement, ECF No. 134. Having considered the parties' arguments, the court **affirms** its prior order.

## I. LEGAL STANDARD

The Bail Reform Act "mandates the release of a person pending trial unless the court 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Hir*, 517 F.3d 1081, 1085–86 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)). However, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the court finds "there is probable cause to believe that the person committed" a federal terrorism offense under 18 U.S.C. § 2332b(g)(5)(B). 18 U.S.C. § 3142(e)(3)(C); *see Hir*, 517 F.3d at 1086. While the burden of production shifts to the defendant, the burden of persuasion remains with the government. *Hir*, 517 F.3d at 1086.

"If a defendant proffers evidence to rebut the presumption" of flight risk or dangerousness, the court considers the following factors to determine whether a defendant should be released pending trial:

> (1) the nature and circumstances of the offense charged, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

*Id.* at 1086 (citing 18 U.S.C. § 3142(g)). A court's finding that a defendant is a danger to any other person and the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). The government bears the burden of showing a defendant is a flight risk by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). If, after a hearing, the court finds "no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of any other person and the community," the court must order the detention of the person before trial. 18 U.S.C. § 3142(e).

Here, where the court grants consideration in light of new information the defense presents, it may reconsider previously decided questions, including whether the government has met its burden to show no condition or combination of conditions will reasonably assure the appearance defendant as required and the safety of the community. *Cf. United States v. Burk*, No. 19-00117, 2021 WL 6617702, at *2 (D. Alaska Oct. 29, 2021) ("A judicial officer in a detention hearing considers 18 U.S.C. § 3142(g) factors and considers any information presented."); *see also* 18 U.S.C. § 3142(f)(2) (hearing may be reopened); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) ("[T]he court may reconsider previously decided questions in cases in which . . . new evidence has surfaced . . . .").

## II.  ANALYSIS

The court has carefully reviewed all the relevant material in the record, including the parties' briefs, videos provided to the court with translation, the pretrial service reports, oral arguments and witness testimony. Considering the evidence before it, the court finds there are no conditions or combination of conditions that will reasonably assure the safety of any other person and the community.

As a preliminary matter, defendant has proffered some evidence to rebut the presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *See* 18 U.S.C. § 3142(e)(3)(C). Specifically, he has provided evidence of his lack of criminal history, witness testimony from his wife, Liana Kurasheva, and the availability of bond and third-party custodians. *See generally* Mot. Recons., ECF No. 121; Def.'s Renewed Mot., ECF No. 85. However, his proffer does not mean the presumption is "erased." *Hir*, 517 F.3d at 1086. "[T]he presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.* (internal marks and citation omitted). As noted, the

burden of production is on the defendant; the burden of persuasion remains with the government. *Id.*

Here, the court declines to revisit its conclusion that the government has not shown by a preponderance of the evidence there are no conditions of release that would reasonably assure the appearance of Mr. Kurashev. *See* Mot. Revoke Hr'g (June 26, 2023) Tr. 6:9–8:1,[2] ECF No. 113. Defendant's lack of travel documents and ties with his immediate family in this country weigh against a finding of flight risk. Nothing suggests Mr. Kurashev would be able to evade pretrial services supervision or the government's close monitoring him if released. The court finds certain conditions of release including monitoring and posting of bonds could reasonably assure the appearance of Mr. Kurashev. Thus, the court turns to determining the question of dangerousness and considers the four statutory factors set forth in 18 U.S.C. § 3142(g).

First, the nature and circumstances of the offense charged is extremely serious. Section 3142(g)(1) specifically requires the court to consider whether the offense charged is "a Federal crime of terrorism." Here, the indictment alleges Mr. Kurashev knowingly attempted to provide "material support or resources" to a foreign terrorist organization in violation of 18 U.S.C. § 2339B(a)(1)—knowing the organization Hayat Tahrir al-Sham, HTS, was a terrorist organization and engages in terrorist activity. *See* Indictment, ECF No. 1. If convicted, he faces up to 20 years in federal prison. While recognizing Mr. Kurashev is innocent until proven guilty, the nature and circumstances of the offense in this context weigh in favor of finding dangerousness.

Second, although the weight of the evidence is the least important factor, the decision in *Hir* models the way in which the court considers the evidence here. *See Hir*, 517 F.3d at 1090. The court has considered the testimony of Jessi Groff who testified Faruk Fayzimatov is "a very well-known recruiter, fundraiser and propagandist" for HTS. Evid. Hr'g Tr. 8:22–23, ECF No. 136. HTS is and has been a designated terrorist organization at all the relevant times. *See* Evid. Hr'g. Tr. 7:2–23; Opp'n at 7 n.3. However, Mr. Fayzimatov was designated as a "Specially

---

[2] For hearing transcripts, the court cites to the page numbers on the transcripts and not to the page numbers generated by the CM/ECF system.

1   Designated Global Terrorist" in July 2021, only after Mr. Kurashev was indicted. *See* Evid. Hr'g
2   Tr. 53:22–54:8; *see* Indictment. Mr. Kurashev used encrypted means of communication and
3   utilized private networks, including virtual private networks or VPNs, to communicate with
4   Mr. Fayzimatov and access Mr. Fayzimatov's videos on a website called Muhajir.com. *See id.*
5   10:22–24, 22:3–23:15. He also accessed Muhajir.com on his son's device. *Id.* 30:16–19. After
6   transmitting his communications, Mr. Kurashev selectively deleted audio and video files as well
7   as messages that were sent to Mr. Fayzimatov, as well as to an NYPD Cyber operative, and other
8   individuals. *See id.* 27:3–28:11. In contrast, he did not delete any conversations with friends or
9   family. *Id.* 28:8–11. He also sent funds eighteen separate times in sums of a thousand dollars or
10  less to support Mr. Fayzimatov; Mr. Fayzimatov encouraged this pattern of sending smaller sums
11  of money as a means of avoiding "raising suspicion." *Id.* 37:21–39:17. Although each of Mr.
12  Kurashev's individual activities on their own may appear to be innocuous, taken together, the
13  overall circumstances suggest he made efforts to cover his tracks.
14         In addition to these actions, Ms. Groff testified the following circumstances demonstrate
15  defendant's radicalization. The contents Mr. Kurashev accessed on Muhajir.com depicted images
16  Ms. Groff characterized as "radical extremist images." *Id.* 40:5–19. For example, one exhibit
17  showed an image of a decapitated head of a French teacher killed by an individual in France, who
18  was in direct contact with Mr. Fayzimatov. *Id.* 40:8–17. According to Ms. Groff, someone
19  would have to search for these images; these are not images "you would just happen upon." *Id.*
20  4:17–19. Apart from Muhajir.com, Mr. Kurashev also looked at military tactical equipment and
21  searched for terrorist attacks all over the world. *Id.* 39:8–17. Mr. Kurashev also became involved
22  in a project called Umma Life after Mr. Fayzimatov told him he was fundraising for it. *Id.* 25:25–
23  26:23. Umma Life is "part of the umbrella of the HTS projects" and according to
24  Mr. Fayzimatov, it helps to "control people's minds." *Id.* 26:14–19; *see also id.* 35:22–36:4.
25  Ms. Groff testified Umma Life is "an entryway to get people radicalized and then funnel them
26  into Muhajir.com, which is the overt HTS website." *Id.* 26:20–23. Mr. Kurashev expressed
27  support for Umma Life and stated he would provide funds for the project. *Id.* 36:8–14. He
28  acknowledged the risks to the "soul's safety and money," and affirmed he would not regret the

money he spends on the project, even if it were to be shut down, because he would be rewarded. *Id.* 36:8–37:1. Ms. Groff suggested Mr. Kurashev was talking about heavenly, nonfinancial rewards. *Id.* 36:22–37:1. According to Ms. Groff, this again demonstrated his radicalization because he was "putting financing of a foreign terrorist organization above his own safety and security[.]" *Id.* 36:17–21. Moreover, when defendant sent funds to an individual in Turkey who according to Ms. Groff was "basically a courier" for Mr. Fayzimatov, *id.* 25:6–26:5, Mr. Kurashev made sure to write the money was for relatives in Turkey to hide the real reason for the transfer, *id.* 32:19–33:2. The defense did not present any evidence to rebut the government's expert or its evidence. For example, while Ms. Kurasheva testified her husband told her about Umma Life and explained it was a social media platform for Muslims, *id.* 70:1–71:11, the testimony itself does not rebut Ms. Groff's testimony that Umma Life is a project of HTS. Additionally, while Ms. Kurasheva testified she knew Mr. Kurashev was sending money abroad, *id.* 66:19–67:1, 76:3–10, she did not know where or to whom he was sending money to, *id.* 76:5–6.

The court also has considered the following evidence it previously gave weight to in its order revoking the magistrate judge's release order: Mr. Kurashev's communications with Mr. Fayzimatov, including statements indicating his desire to be a martyr—a shahid—and wishes to join the fight in Syria; that "war is an expensive pleasure" in the context of discussing funding needs in the amount of $200,000; the nature of the media content Mr. Kurashev accessed; as well as the transfer of approximately $13,000, including $200 in bitcoin, followed by his efforts to cover tracks to support Mr. Fayzimatov's activities, which cannot reasonably be characterized as limited to media activism. *See* Mot. Revoke Hr'g (June 26, 2023) Tr. 9:10–11:2. While defendant has provided a letter to the court, he has not produced additional evidence to persuasively support his contention that he was merely supporting media activism and his communications are not indicative of radicalization, *see* Letter, ECF No. 125-1 (informing court he thought Mr. Fayzimatov was just a media activist and explaining his use of the phrase "war is an expensive pleasure"). The defense has not produced its own expert testimony to rebut or call into question Ms. Groff's testimony. Nothing in the record allows the court to conclude the

media content defendant accessed is analogous to "American rap and hiphop music that depicts guns and violence and conflict." *See* Mot. Revoke Hr'g (June 22, 2023) Tr. 14:21–25, ECF No. 120. No evidence suggests Muhajir.com is a site supporting independent journalism without ties to any designated terrorist organizations. The defense also does not support its argument that Mr. Kurashev's statements mean something different in the Russian linguistic or semantic context or in the mainstream Muslim community. *Id.* 10:11–12:11. Having considered the totality of the evidence, the court concludes significant evidence weighs against Mr. Kurashev and in the government's favor with respect to dangerousness.

       The third factor, history and characteristics of the person, weighs slightly against a finding of dangerousness. Although defendant's communications with Mr. Fayzimatov and transfer of significant funds to him while his immigration case was pending calls Mr. Kurashev's judgment into question, he has no criminal history in the United States, has a positive employment history, and is a father of four young children who reside in this country. His wife, Ms. Kurasheva, testified to his calm, kind and good natured character. Evid. Hr'g. Tr. 66:3–6. The court has no reason to doubt Ms. Kurasheva's credibility. This factor weighs against a finding of dangerousness.

       Finally, the fourth factor, the nature and seriousness of the danger to any person or the community that would be posed by Mr. Kurashev's release, also weigh against release. Under *Hir*, the court may consider the danger to a foreign community, including Syria, which the government argues is the relevant community at issue. *See* 517 F.3d at 1088–89. Here, the court finds the government has provided clear and convincing evidence indicating Mr. Kurashev was willing to financially support activities that pose a significant danger to people in Syria. Accordingly, this factor weighs in favor of finding dangerousness.

       Having considered the four factors, the underlying federal terrorism charge and the presumption of dangerousness that remains "as an evidentiary finding militating against release," *Hir*, 517 F.3d at 1086, the court finds the government has met its burden, by clear and convincing evidence, to show Mr. Kurashev poses a danger to any other person and the community.

"Even where a defendant poses a danger, he must still be released if there is a 'condition or combination of conditions [that] will reasonably assure . . . the safety of any other person and the community.'" *Id.* at 1091–92 (quoting 18 U.S.C. § 3142(e)). The magistrate judge ordered Mr. Kurashev released on specific conditions including restriction of internet access, location monitoring, and home detention, and posting of a $45,000 cash bond and two unencumbered vehicles. *See* Renewed Mot. Bail Rev. Tr. 25:3–24, ECF No. 106. The defense argues the government has failed to provide evidence that "a complete restriction on Mr. Kurashev's access to the internet . . . , coupled with a restriction on his travel outside of his home controlled by location monitoring, and the appointment of one or more third party custodians, would not reasonably assure the safety of the community at issue." Def.'s Closing Statement at 5.

First, the bond amount already posted—$45,000 and two vehicles—is too low given the weight of the evidence in this case and the apparent availability of greater bond resources. *Cf. United States v. Goba*, 220 F. Supp. 2d 182, 194 (W.D.N.Y. 2002) (requiring a bond in the sum of $600,000 for individual charged with violating 18 U.S.C. § 2339B). Although it appears additional resources are available, they have not been formally offered or made available. For example, the Pretrial Services Report dated August 21, 2023, notes Andrey Kashivskiy at one point expressed a willingness to cosign an unsecured bond on defendant's behalf in an amount up to $200,000. *See* Pretrial Service Fourth Supplemental Bail Review. Additionally, Ms. Kurasheva, Mr. Alikhan Evoloev and Mr. Don Watson have indicated their willingness to post additional amounts. *See* Mot. Revoke Hr'g (June 22, 2023) Tr. 32:23–34:15. The court also notes the check for $25,000 from Mr. Watson has been returned twice for insufficient funds. *See* Letter from Clerk, ECF No. 116.

Second, although Ms. Kurasheva, the proposed third-party custodian, has testified she would report any violations of any conditions by Mr. Kurashev, and the court does not doubt her sincerity, before his arrest, while living at home with her, defendant was able to communicate with and send money to Mr. Fayzimatov without Ms. Kurasheva's knowledge. *See* Evid. Hr'g Tr. 66:19–67:1, 75:22–76:25. The defense has not explained how Ms. Kurasheva could be more effective post-arrest, given the nature of her marital and familial relationship with defendant.

Finally, no matter how stringent a set of conditions is, for any proposed conditions to be effective, they depend on Mr. Kurashev's good faith compliance. *See Hir*, 517 F.3d at 1093; *see, e.g.*, *United States v. Brugnoli-Baskin*, No. 22-00499, 2022 WL 16636429, at *6 (W.D. Wash. Nov. 2, 2022); *United States v. Christie*, No. 10-00384, 2010 WL 2900371, at *7 (D. Haw. July 20, 2010); *United States v. Petersen*, 557 F. Supp. 2d 1124, 1131 (E.D. Cal. 2008). As the court has noted, the government's evidence shows Mr. Kurashev sent financial support to Mr. Fayzimatov for reasons that cannot reasonably be characterized as solely motivated by a support for media activism, a narrative defendant maintains. *Compare* Evid. Hr'g. Tr. 20:21–39:17 (describing media content and communications), *with* Letter (noting he thought Mr. Fayzimatov was a media activist and naively donated money). Mr. Kurashev did so eighteen different times, Evid. Hr'g. Tr. 38:20–21, and did so while knowing he was subject to Immigration and Customs Enforcement supervision and location monitoring while released within this country pending immigration removal proceedings, *see* Pretrial Service Fourth Supplemental Bail Review; Gov't's Closing Statement at 3.

Additionally, defendant's use of private networks and encrypted messaging applications, *Id.* 22:1–30:19, and his successful deletion of specific communications, *id.* 28:2–7, are not consistent with someone acting only in good faith. Even with strict conditions, for example, he may have access to his children's electronic devices. *See id.* 30:16–19 (testifying defendant accessed Muhajir.com using his son's phone). While defendant suggests he would have been deradicalized while detained even if he was allegedly radicalized beforehand, *id.* 57:1–61:13, he has not effectively rebutted the government's evidence regarding radicalization and its persistence, *see id.* 26:14–37:1, 60:6–61:13 (describing actions and circumstances demonstrating radicalization). Although Mr. Kurashev states he does not support HTS's message and will "never ever have anything to do with" Mr. Fayzimatov again, *see* Letter, he has not expressly disavowed HTS and its activities and there is no evidence he has voluntarily cooperated with law enforcement agents or offered to disclose information regarding his activities and what he may know. *Cf. Goba*, 220 F. Supp. 2d at 194 (releasing on bail defendant who "apparently disavowed or disclaimed any continued participation in the activities of [a designated terrorist organization],"

voluntarily cooperated with FBI agents, "made disclosures about his own activities" and also "made express statements of disagreement with the beliefs of [the designated terrorist organization] and the use of terrorism against inhabitants of this country."). As in *Hir*, the court finds there is "an unacceptably high risk" defendant will not comply with the proposed conditions in good faith. *See* 517 F.3d at 1093.

Based on the current record and having considered the relevant § 3142(g) factors, the court finds there are no conditions or combination of conditions that will reasonably assure the safety of any person and the community such that Mr. Kurashev can be released. The court **affirms** its prior order.

IT IS SO ORDERED.

DATED: November 30, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE